NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0308n.06

Case No. 25-3967

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BERLYN MAYRENIS ESPINOZA-REYES, | ) ) ) | **FILED** Jul 16, 2026 KELLY L. STEPHENS, Clerk |
| Petitioner, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| TODD W. BLANCHE, Acting U.S. Attorney General, | ) ) | |
| Respondent. | ) ) ) | OPINION |

Before: SILER, DAVIS, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Berlyn Mayrenis Espinoza-Reyes applied for asylum, withholding of removal, and protection under the Convention Against Torture. An immigration judge denied her claims, and the Board of Immigration Appeals affirmed. We deny Espinoza-Reyes's petition for review.

**BACKGROUND**

**I.    Factual background**

Espinoza-Reyes is a native and citizen of Guatemala. Her previous partner, with whom she shares a child, abused Espinoza-Reyes physically, sexually, and emotionally. Espinoza-Reyes did not report this abuse to the Guatemalan police but left her previous partner for her current husband, Kevin Otoniel Cartagena.

Kevin's father, Otoniel Cartagena Perez, was a local politician known for his anti-corruption and anti-gang views.[1]  Espinoza-Reyes testified that she would sit on the stage at Otoniel's campaign rallies, organize community members to support him, and open her home for his campaign events.  Otoniel received anonymous calls threatening to kill him for his anti-gang views and was later shot and killed in 2013.  Kevin also received anonymous death threats, and he fled to the United States in 2014.

Two years later, Espinoza-Reyes herself received three threatening text messages in the same week.  The first message said she was an "old bitch" and threatened to kill her daughter.  AR 250, 261, Hr'g Tr.  The second message said that she was going to have "a black holy week."  *Id.*  The third message said Espinoza-Reyes would be killed because she was an "old bitch."  *Id.* at 251, 261.  Espinoza-Reyes believed these calls were from the same people who threatened Kevin and killed her father-in-law.

Kevin testified that Espinoza-Reyes was threatened because she openly supported his father and his father's anti-corruption and anti-gang policies.  He also believed that the threats Espinoza-Reyes received were from the same people who threatened him and killed his father.  According to Kevin, Espinoza-Reyes would be in danger if she returned to Guatemala because the gangs are "everywhere" and the police would not protect her.  *Id.* at 285.

## II.  Procedural background

After Espinoza-Reyes entered the United States on June 8, 2016, the Department of Homeland Security issued Espinoza-Reyes a notice to appear charging her with removability.  *See*

---

[1] For ease of reference, we refer to Kevin Otoniel Cartagena and Otoniel Cartagena Perez by their first names.

8 U.S.C. § 1182(a)(7)(A)(i)(I).  Espinoza-Reyes admitted the factual allegations in the notice and conceded removability.

### A.      Proceedings before the Immigration Judge

Espinoza-Reyes filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  She claimed relief based on her political opinions and her membership in several gender- and family-based particular social groups, including "Guatemalan women unable to leave the domestic relationship," "Guatemalan women treated as property by virtue of their status within the domestic relationship," the "family of Otoniel Cartagena Perez," and the "immediate family of Kevin Otoniel Cartagena."  AR 218-19, Hr'g Tr.; AR 437, Pre-Trial Br.  Espinoza-Reyes stated that she feared abuse from her former partner and that the gangs in Guatemala would harm her due to her association with her father-in-law.

Espinoza-Reyes submitted evidence of country conditions, including the 2018 Department of State Country Report on Human Rights Practices and the 2019 Department of State Guatemalan Crime and Safety Report.  The Country Report noted widespread government corruption in Guatemala, as well as sexual violence against women.  The Safety Report also noted the crime and corruption throughout the country.  Additionally, Espinoza-Reyes submitted sworn affidavits from her husband, mother, and mother-in-law, as well as a police report regarding her father-in-law's death.  Finally, Espinoza-Reyes submitted a report from a counselor stating that Espinoza-Reyes suffers from severe depression and that her symptoms were consistent with diagnostic criteria for persistent depressive disorder and generalized anxiety disorder.

On October 18, 2021, an Immigration Judge ("IJ") held a hearing, during which both Espinoza-Reyes and Kevin testified.  The IJ found that Espinoza-Reyes had testified credibly but nonetheless denied her application for asylum, withholding of removal, and CAT protection.  The

IJ determined that, although Espinoza-Reyes was abused by her former partner, the proposed particular social groups of "Guatemalan women unable to leave the domestic relationship" and "Guatemalan women treated as property by virtue of their status within the domestic relationship" were not cognizable because they lacked social distinction. AR 132-36, 138, 140, Oral Dec. of IJ. With respect to Espinoza-Reyes's family-based particular social groups, the IJ determined that, although those groups were cognizable, Espinoza-Reyes had not experienced past persecution based on family political ties.

The IJ further determined that any fear of future harm based on political affiliation or belief was not objectively reasonable because the threats that Espinoza-Reyes received were vague and speculative. The IJ also found that, even if Espinoza-Reyes had shown past persecution or a reasonable fear of future persecution on political-affiliation grounds, she had failed to show a nexus—that is, "one central reason for the harm"—between the vague threats and her family-based particular social groups. *Id.* at 140-41.

The IJ therefore ruled that Espinoza-Reyes had not shown eligibility for asylum or withholding of removal. As to the CAT, the IJ found that Espinoza-Reyes had failed to establish harm rising to the level of torture.

## B. The BIA's ruling

The Board of Immigration Appeals ("BIA") affirmed the IJ's decision in November 2025. The BIA upheld the IJ's conclusion that Espinoza-Reyes's gender-based proposed particular social groups were not cognizable because they were "impermissibly defined by the harm suffered." AR 3-4, BIA Dec. Nor had Espinoza-Reyes demonstrated a nexus between the threats she received and either (1) an imputed political opinion, or (2) the particular social groups of imputed membership in her father-in-law or husband's families, because the evidence of nexus was "too

speculative." *Id.* at 4. The BIA declined to reach any of Espinoza-Reyes's asylum arguments because the lack of cognizability and nexus doomed her case. The BIA deemed the withholding-of-removal and CAT claims waived because Espinoza-Reyes did not "meaningfully challenge" the IJ's decision on those points. *Id.* Finally, the BIA rejected Espinoza-Reyes's due-process argument that the IJ "fail[ed] to consider all factors." *Id.* at 4-5.

**ANALYSIS**

On petition for review, Espinoza-Reyes argues that the BIA erred by denying her application for asylum, withholding of removal, and protection under the CAT. She also argues that the BIA violated her due process rights by failing to consider all the evidence that she submitted. None of her arguments have merit.

**I.     Standard of review**

We review the BIA's legal determinations de novo and its factual findings under the substantial-evidence standard. *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487, 495 (6th Cir. 2024). Under the substantial-evidence standard, we "will uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664 (6th Cir. 2024) (citation modified). We will reverse a factual finding only if "the evidence not only supports a contrary conclusion, but *compels* it." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)).

We consider the BIA's decision "the final agency determination" when it issues a "separate opinion." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 497 (6th Cir. 2015) (citation omitted). We "also review the [IJ]'s decision to the extent that the [BIA] adopted it." *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020).

## II. Asylum claims

The government may grant asylum to an applicant who proves she is "unable or unwilling to return to" her "country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). Asylum claims require an applicant to show a "nexus" between her "risk of persecution in the country of removal" and her "membership in a protected group." *Patel v. Bondi*, 131 F.4th 377, 381 (6th Cir. 2025) (citation modified). To show a nexus, the applicant must present "*some* evidence" that "the government, or persons the government is unwilling or unable to control," sought to inflict harm or suffering "to overcome a [protected] characteristic." *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 847 (6th Cir. 2023) (citation modified). "This is a question of motive, not just simple causation." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019). "[A]n asylum claim requires that a statutorily protected ground be 'at least one central reason' for alleged persecution." *Sebastian-Sebastian*, 87 F.4th at 851 (quoting *Guzman-Vazquez v. Barr*, 959 F.3d 253, 270 (6th Cir. 2020)).

### A. Gender-based particular social groups

To show that a proposed particular social group is cognizable, a petitioner must establish that the group is (1) made up of people sharing "a common, immutable characteristic"; (2) defined with particularity; and (3) socially distinct insofar as its "shared characteristic . . . [can be] perceived as a group by society." *Gonzales-De Leon v. Barr*, 932 F.3d 489, 492-93 (6th Cir. 2019) (citation modified). The BIA reasoned that Espinoza-Reyes's claimed particular social groups of "Guatemalan women unable to leave the domestic relationship" and "Guatemalan women treated as property by virtue of their status within the domestic relationship" were not cognizable because they were "impermissibly defined by the harm suffered" in contravention of *Matter of A-B-*, 27 I.

& N. Dec. 316, 334-36 (A.G. 2018) ("*Matter of A-B- I*"). AR 3-4, BIA Dec. Because the BIA's decision as to these particular social groups "hing[ed] on a purely legal question . . . we review that determination de novo." *Reyes Galeana v. Garland*, 94 F.4th 555, 558 (6th Cir. 2024).

We pause briefly to review the history of *Matter of A-B- I*. That decision overruled a prior decision, *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), which had recognized as a particular social group "married women in Guatemala who are unable to leave their relationship." 27 I. & N. Dec. at 319. *Matter of A-B- I* reasoned that, "to be cognizable, a particular social group must exist independently of the harm asserted in an application for asylum or [withholding of removal]." *Id.* at 334 (citation modified). Rather, the group's members must "share a narrowing characteristic other than their risk of being persecuted," so as to "establish actual persecution." *Id.* at 335 (citation modified). *Matter of A-B- I* concluded that "married women in Guatemala who are unable to leave their relationship" did not qualify as a particular social group because (1) the group was defined circularly (that is, by the harm experienced), (2) the group lacked particularity, and (3) there was no evidence that Guatemalan society recognized this group. *Id.* at 334-36.

A later decision, *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021) ("*Matter of A-B- III*"),[2] vacated *Matter of A-B- I*, and instructed immigration judges and the BIA to follow pre-*A-B- I* precedent, including *Matter of A-R-C-G-*. *Matter of A-B- III*, 28 I. & N. Dec. at 309. But last fall, before the BIA issued its decision in this case, the Attorney General issued *Matter of S-S-F-M-*, 29 I. & N. Dec. 207 (A.G. 2025), which reinstated *A-B- I*, including its overruling of *A-R-C-G-*. 29 I. & N. Dec. at 208, 210.

---

[2] See *Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021), for the second of the *Matter of A-B-* decisions, which addresses other factors not at issue here.

The BIA recognized *Matter of S-S-F-M-* in its decision in Espinoza-Reyes's case. And we consider the principles articulated in *A-B- I* in evaluating her petition.

Espinoza-Reyes claims membership in the proposed particular social groups of "Guatemalan women unable to leave a domestic relationship" and "Guatemalan women treated as property by virtue of their status within a domestic relationship." CA6 R. 8, Pet'r Br., at 25. She argues that her persecution stemmed from her identity as a member of these groups. Espinoza-Reyes further contends, citing our decision in *Juan Antonio*, that *Matter of A-R-C-G-* remains "good law" in this circuit, and that her proposed gender-based particular social groups are cognizable under these decisions. *Id.*

Espinoza-Reyes's arguments fail. In *Juan Antonio*, we relied on *Matter of A-R-C-G-* in affirming the BIA's recognition of "married (indigenous) women in Guatemala who are unable to leave their relationships" as a particular social group. 959 F.3d at 789-91. But the Attorney General has now expressly overruled *A-R-C-G-*, lessening the persuasive value of *Juan Antonio*'s reasoning as to the cognizability of the particular social group at issue in that case.

Moreover, two additional factors set *Juan Antonio* apart from the present case. First, we noted in *Juan Antonio* the well-established principle that "a social group may not be circularly defined by the fact that it suffers persecution." *Id.* at 790 (citation modified); *accord A-B- I*, 27 I. & N. Dec. at 334 ("To be cognizable, a particular social group *must* exist independently of the harm asserted . . . ." (citation modified)). "Rather, the group must share a narrowing characteristic other than their risk of being persecuted." *Juan Antonio*, 959 F.3d at 790 (citation modified). But there *was* more than a circular definition in Juan Antonio's case. Her proposed particular group was not simply "married women in Guatemala who are unable to leave their relationships"; rather,

the proposed group contained a narrowing "race-based distinction" in that the petitioner was an indigenous Mayan. *Id.* at 790-91. Espinoza-Reyes does not assert such a narrowing.

Second, the particular social group that Espinoza-Reyes articulates (Guatemalan women unable to leave the domestic relationship) is different from the one in *Juan Antonio*. The proposed group in that case was "*married* (indigenous) woman in Guatemala who are unable to leave their relationships," *see id.* at 789, 791 (explaining that "marital status can be an immutable characteristic where the individual is unable to leave the relationship," a nuanced inquiry that involves "societal expectations" and "legal constraints" (citation modified)). Indeed, Espinoza-Reyes was not married to her abusive ex-partner.

*Juan Antonio* therefore does not provide a basis for holding that "Guatemalan women unable to leave domestic relationships" is a cognizable social group. Rather, we apply longstanding precedent that "a social group may not be circularly defined by the fact that it suffers persecution." *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011). Because Espinoza-Reyes's proposed particular social group is defined by the harm it suffers, it is circular and not cognizable. *See A-B- I*, 27 I. & N. Dec. at 335 (proposed particular social group of women "unable to leave their relationship" is "effectively defined to consist of women . . . who are victims of domestic abuse because the inability to leave was created by harm or threatened harm" (citation modified)).

With respect to Espinoza-Reyes's proposed particular social group of "Guatemalan women treated as property by virtue of their status within a domestic relationship," that, too, is a group defined by the harm inflicted upon it. Espinoza-Reyes again relies on *Juan Antonio*, but that decision says nothing about a proposed particular social group whose members are treated or viewed as property. And at least one of our decisions held that the analogous proposed particular social group of "young Salvadoran women considered to be property of the gangs" lacked "a

narrowing characteristic other than [the] risk of being persecuted." *Vasquez-Rivera v. Garland*, 96 F.4th 903, 906, 908 (6th Cir. 2024) (citation modified); *accord Linares-Campos v. Garland*, No 23-2568, 2024 WL 3367913, at *1-2 (8th Cir. July 11, 2024) (per curiam) (proposed particular social group of "women in El Salvador viewed as property" not cognizable); *Alvarado v. U.S. Att'y Gen.*, 984 F.3d 982, 991-92 (11th Cir. 2020) (per curiam) (proposed group of "Honduran women who are viewed as property" not cognizable); *Garcia-Ventura v. Barr*, 788 F. App'x 969, 970-71 (5th Cir. 2019) (per curiam) (claimed particular social group of "victims of domestic violence who are viewed as property by virtue of their positions within a domestic relationship" not cognizable); *see also Lucero-Rocano v. Bondi*, No 23-7982, 2026 WL 445121, at *2 (2d Cir. Feb. 17, 2026) (order) (proposed particular social group "Ecuadorian women viewed as property" not cognizable because it was too "amorphous" and "subjective" (citation modified)).

As a last-ditch effort, Espinoza-Reyes argues that her supporting documents "clearly substantiate that Guatemalan society accepts the practice of domestic abuse and violence" and that Guatemalan women who are unable to leave domestic relationships or are treated as property by virtue of their status in domestic relationships "exist and are set apart within [Guatemalan] society in some significant way." CA6 R. 8, Pet'r Br., at 25, 27 (citation modified). But even if the State Department Country Report notes that domestic abuse and violence against women is rampant in Guatemala, it "do[es] not shed any light on whether society would recognize this group [of Guatemalan women who are viewed as property by virtue of their domestic relationship] as distinct." *Tomas-Miguel v. Barr*, 812 F. App'x 717, 718 (9th Cir. 2020). Espinoza-Reyes did not demonstrate that there is a consensus in Guatemala about how Guatemalan women viewed as property due to their domestic relationship are distinguished from Guatemalan women generally.

The BIA did not err in finding that Espinoza-Reyes failed to establish a cognizable gender-based particular social group. Accordingly, we uphold its rejection of her gender-related asylum claims.

### B.      Family- and politics-based particular social groups

Espinoza-Reyes also contends that she received threats in 2016 "because she is related to [Otoniel] Carta[g]ena and Kevin" and "because of her imputed political opinion." CA6 R. 8, Pet'r Br., at 28. The BIA found that Espinoza-Reyes had failed to establish the requisite nexus between her imputed political opinions and the particular social groups of "imputed membership in the particular social group of family of Otoniel Carta[g]ena Perez" and "imputed membership of the family of Kevin Otoniel Carta[g]ena." AR 4, BIA Dec. (citation modified). "A nexus determination is a finding of fact and is thus reviewed under the substantial-evidence standard." *Sebastian-Sebastian*, 87 F.4th at 847. To obtain relief, Espinoza-Reyes needed to show that her imputed political opinions, or her imputed membership in Otoniel or Kevin's families, were a reason for her persecution. But the BIA found the three threatening text messages she received were too attenuated from her association with her husband's family or her imputed political opinions.

A petitioner must provide some evidence of her persecutor's motive, "direct or circumstantial." *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). "It is not enough to present evidence that the applicant *had* a political opinion or *was* a member of [a] social group. Evidence must be presented which suggests that the applicant was persecuted *on account of* or *because of* the political opinion." *Marku*, 380 F.3d at 986 (citation modified).

Here, Espinoza-Reyes argues that her alleged persecutors sent her threatening text messages because of her imputed political opinion and involvement in her father-in-law's political

campaigns. But we have declined to find nexus between alleged persecutory motive and vague or anonymous threats where doing so would require "inferential leaps that strain the boundaries of circumstantial evidence." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 595 (6th Cir. 2010) (declining to infer nexus between threatening phone calls that the petitioner believed were from alleged persecutor and any ground for asylum); *accord Navarrete-Paredes v. Ashcroft*, 96 F. App'x 348, 349-50 (6th Cir. 2004) (order) (petitioner did not demonstrate a nexus between the oral and written threats he received and any statutory ground for asylum); *Valensuela-Ortega v. INS*, 58 F. App'x 145, 148 (6th Cir. 2003) (petitioner presented no evidence of linkage between threatening phone calls and the claimed protected behavior).

Here, Espinoza-Reyes received threats two years after her husband had left the country, as well as several years after she publicly supported her father-in-law's campaigns. The record does not reflect that Espinoza-Reyes was active in politics or known for her political opinions after her father-in-law was killed. In fact, she testified that Kevin was not active in politics after his father died. And the threatening text messages that she received never mentioned politics, her husband, or her father-in-law at all. Although Espinoza-Reyes and Kevin believed that these calls were from the same people who threatened Kevin and killed Otoniel, no evidence in the record corroborates their belief.

Espinoza-Reyes also admitted that she did not know who killed Otoniel. And she herself testified that the final threat said she would be killed because she was an "old bitch," not because of her family association or political opinion. AR 251, 261, Hr'g Tr. To conclude that this slur referred to Espinoza-Reyes's political activities or opinions would require an unsupported "inferential leap[]." *Pablo-Sanchez*, 600 F.3d at 595; *see also Rosa-Mejia v. Garland*, 854 F. App'x 9, 13 (6th Cir. 2021); *Myftari v. Mukasey*, 302 F. App'x 401, 408-09 (6th Cir. 2008).

Espinoza-Reyes correctly notes that she is not expected to provide direct proof of her alleged persecutors' motive. But she must show "*some* evidence of it, direct or circumstantial." *Elias-Zacarias*, 502 U.S. at 483. Because she is asking this court to reverse the determination of the BIA, the evidence must be "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* at 483-84. The evidence that she has mustered does not rise to that level. We therefore uphold the BIA's rejection of Espinoza-Reyes's family- and politics-related asylum claims.

## III.    Due process claim

Finally, Espinoza-Reyes argues that the BIA violated her due process rights by failing to (1) address all her arguments in support of her claims; and (2) consider her supporting documents, corroborating evidence, and credible testimony. She specifically complains that the BIA did not address whether her "past harm rises to the level of persecution" and that her "fear of return to Guatemala is objectively reasonable." CA6 R. 8, Pet'r Br., at 22-23. These arguments fail.

"Due process requires that an [immigrant] be afforded a full and fair hearing." *Mapouya v. Gonzales*, 487 F.3d 396, 415-16 (6th Cir. 2007). "To prevail on a due process claim, a petitioner must demonstrate actual prejudice, and that the alleged prejudice materially affected the outcome" of their case. *Id.* at 416. Claims of due-process violations in removal proceedings are reviewed de novo. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016).

If an alien's asylum application is fatally flawed in one respect (e.g., failure to show membership in a proposed social group), an immigration judge or the BIA need not examine the remaining elements of the claim. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976); *Vasquez-Rivera*, 96 F.4th at 908. "[O]ur cases have . . . repeatedly said that the [BIA] . . . need not issue an opinion that discusses and rebuts every piece of record evidence that cuts against its findings."

*Palucho v. Garland*, 49 F.4th 532, 537-38 (6th Cir. 2022). It is sufficient that the BIA review the IJ's analysis, cite precedent, and make its holding clear. *Vasquez-Rivera*, 96 F.4th at 908-09.

That is what the BIA did in the present case. Because the BIA's "grounds for decision are clear," we can conduct "meaningful judicial review" of its decision. *Id.* at 909 (citation modified). And to the extent that Espinoza-Reyes contends that the BIA's declining to address past persecution or the reasonableness of her fear of returning to Guatemala constituted a "concession" of those issues in her favor, she cites no precedent for that conclusion. CA6 R. 8, Pet'r Br., at 22-24.

Espinoza-Reyes, moreover, has not identified any specific evidence that the agency failed to take into account, which dooms any argument that she was prejudiced by the BIA's alleged lack of consideration. *Sebastian-Sebastian*, 87 F.4th at 853. In sum, Espinoza-Reyes has not rebutted the presumption that the BIA appropriately reviewed all the evidence in her case. *See, e.g.*, *Aoraha v. Gonzales*, 209 F. App'x 473, 476-77 (6th Cir. 2006); *Pilica v. Ashcroft*, 388 F.3d 941, 949-50 (6th Cir. 2004). For these reasons, we reject her due process argument.

## IV. Withholding of removal and CAT claims

The BIA determined that Espinoza-Reyes had not "meaningfully challenge[d] the [IJ]'s denial of withholding of removal or protection under the CAT," so it "deem[ed] these issues waived." AR 4, BIA Dec. Espinoza-Reyes makes vague references to these claims in her appellate brief, but she develops no argument that the BIA erred. Where the BIA concludes that a petitioner has waived a claim "by failing to challenge it" before the BIA, and the petitioner fails to "challenge the [BIA's] waiver finding in [her] opening brief" in our court, we have concluded that the petitioner "has forfeited any argument that [s]he preserved the issue before the" BIA. *Gamas-Vicente v. Blanche*, 172 F.4th 484, 492 (6th Cir. 2026). We take the same approach here. Because

Espinoza-Reyes does not challenge the BIA's waiver finding, she cannot show that she preserved her CAT or withholding of removal claims, and we do not review them.

## CONCLUSION

For the foregoing reasons, we deny Espinoza-Reyes's petition for review.